UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| JOAN R. MAYFIELD | CIVIL ACTION NO. 08-1986 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| LIBERTY MUTUAL INSURANCE COMPANY, ET AL. | MAGISTRATE JUDGE HAYES |

### MEMORANDUM RULING

This matter came before the Court for a bench trial on Thursday, March 25, 2010. Plaintiff Joan R. Mayfield filed suit against Larry W. Schwie, West Wisconsin Transport, Inc., and Liberty Mutual Insurance Company (collectively "Defendants") to recover damages for injuries she allegedly sustained as a result of a motor vehicle accident that occurred on December 10, 2007. [Record Document 5]. The parties have stipulated that liability rests exclusively with Larry Schwie. Defendants contest, however, the extent and nature of the damages allegedly suffered by Plaintiff. After testifying at trial, Plaintiff submitted for the Court's review medical records, medical expenses, and the deposition testimony of her treating physicians, Dr. Bryan Mills, Dr. Eubulus Kerr, and Dr. Kathleen Majors. Defendants submitted the deposition testimony of an expert witness, Dr. Donald Smith. After considering the testimony and having carefully examined the documents submitted by the Plaintiff, and based on the following findings of facts and conclusions of law, the Court finds that judgment shall be rendered in favor of the Plaintiff in the amount of $127,698.47, plus court costs and interest.

**FINDINGS OF FACT**

On December 10, 2007, Plaintiff, Joan R. Mayfield, was involved in a motor vehicle accident with an 18-wheeler tractor trailer owned by West Wisconsin Transport, Inc. and operated by Larry W. Schwie, at the intersection of Grimmett Road and North Hearne Avenue in Shreveport, Louisiana. The accident occurred after Schwie ran a red-light and broadsided the Plaintiff's vehicle. [Stipulation 7; Defendants' Proposed Findings of Fact ("DPFF"), ¶ 1]. Schwie was employed by West Wisconsin Transport, Inc. as a truck operator and was acting within the course and scope of his employment at the time of the accident. [Stipulation 1]. Liberty Mutual Insurance Company was the liability insurer of the truck owned by West Wisconsin Transport, Inc., and the insurer of the operator, Schwie, at the time of the accident. [Stipulation 3]. The Liberty Mutual policy covers any liability of its insured in connection with this matter, and the policy limit is sufficient to satisfy any judgment that may be rendered. [Stipulation 5].

Plaintiff went home after the accident, but awoke that afternoon with pain in her neck and back and sought medical treatment at Willis-Knighton Medical Center in Bossier City, Louisiana ("WK Bossier"). [Plaintiff's Testimony]. Plaintiff was diagnosed as having suffered a shoulder sprain, myofascial cervical strain, and thoracic myofascial strain. [Plaintiff's Exhibit 1]. Upon discharge, she was prescribed Motrin 600 mg to take three times a day as needed, and Robaxin 750 mg to take every six hours as needed. Id. As a result of the medical treatment provided to her at WK Bossier, she incurred medical expenses in the amount of $428.07. [Plaintiff's Exhibits 2, 3, 31].

Within a few days following the accident, Plaintiff sought medical treatment from Dr. Bryan Mills, Mills Clinic, who referred her to Northwest Imaging for a diagnostic lumbar

MRI. [Plaintiff's Exhibits 4, 6]. Dr. Mills prescribed Plaintiff anti-inflammatory and muscle relaxer medication, and also prescribed physical therapy for a working diagnosis of cervical and lumbar strain. Plaintiff received physical therapy from Larry Larson, P.T., at Cornerstone Physical Therapy, on a routine basis throughout January and February 2008. While receiving treatment from Dr. Mills and physical therapy at Cornerstone, Plaintiff incurred medical expenses in the amount of $6,060.28. [Plaintiff's Exhibits 4-7, 9].

When Plaintiff continued to experience pain in February 2008, Dr. Mills referred her to Dr. Eubulus Kerr, an orthopedic surgeon at the Spine Institute of Louisiana. After reviewing the MRI performed in December of 2007 and additional x-rays taken in his office, Dr. Kerr determined that "she had a small disc bulge and questionable annular tear at L3-4," and some minor disc degeneration at L4-5, L1-2, and T12-L1. [Kerr Dep. p. 5-6]. Dr. Kerr recommended Plaintiff continue physical therapy and also referred her to Dr. Kathleen Majors for lumbar epidural steroid injections ("ESI's") in order to reduce the inflammation in her back. Id. at p.8. Plaintiff testified that she felt immediate relief after receiving the ESI's.

Plaintiff returned to Dr. Kerr on May 13, 2008, after receiving one round of the lumbar ESI's. Dr. Kerr performed a cervical spine MRI which revealed disc bulges at C2-3, C3-4, C4-5, and C5-6 and soft tears in the disc. Id. at p.9-10. Since she had responded nicely to the lumbar ESI's, Dr. Kerr referred her back to Dr. Majors for cervical spine ESI's to alleviate the pain in her neck. Id. at p.10-11. When Plaintiff returned to Dr. Kerr on June 24, 2008, and again on October 21, 2008, for further evaluation, Plaintiff was essentially pain free and was released from Dr. Kerr's medical treatment. [Plaintiff's Testimony; Kerr Dep. p.11-12].

In February 2009, Plaintiff's pain had returned and she made an appointment with Dr. Kerr, who scheduled a second round of lumbar and cervical ESI's. [Plaintiff's Testimony; Kerr Dep. p.14]. Once again, the ESI's alleviated Plaintiff's pain. [Plaintiff's Testimony; Kerr Dep. p.16]. However, the pain returned in September 2009. Dr. Kerr performed another MRI of her lumbar and cervical spine and scheduled Plaintiff for a third round of ESI's. [Plaintiff's Testimony; Kerr Dep. P.16-20]. Plaintiff received her last ESI on November 10, 2009, and remained pain free at the time of trial. [Plaintiff's Testimony; Plaintiff's Exhibit 29].

As a result of the medical treatment provided by Dr. Kerr and Dr. Majors, including the costs of diagnostic X-rays and MRI studies, ESI's, and prescriptions, Plaintiff incurred medical expenses in the amount of $34,645.46. [Plaintiff's Exhibits 11, 13, 15, 17-19, 21-22, 24-25, 27-28, 30, 32]. In addition, Plaintiff was unable to work for four and one-half days due to the injuries she sustained in the motor vehicle accident and, consequently, lost wages in the amount of $337.64. [Plaintiff's Exhibit 33].

Prior to the December 10, 2007 motor vehicle accident, Plaintiff suffered from degenerative disk disease and spondylosis in both the cervical and lumbar areas. However, Plaintiff's pre-existing condition was asymptomatic. In fact, prior to the accident, she had never sought medical treatment for pain in her back or neck, and had never experienced any aches or pains that could not be alleviated with either Tylenol or Aleve. [Plaintiff's Testimony; Kerr Dep. p. 5-6, 30, 42; Smith Dep. p. 16, 18].

As a result of the December 10, 2007 motor vehicle accident, Plaintiff's pre-existing condition was aggravated, causing her to experience pain in her lumbar and cervical areas. The MRI studies taken after the accident demonstrated Plaintiff was suffering (and

continues to suffer) from disc bulges at L5-S1, C2-3, C3-4, C4-5, and C5-6, and soft disc tearing to her L3-4, C2-3, C3-4, C4-5, and C5-6 discs. [Kerr Dep. p. 6-7, 10; Smith Dep. p. 57]. The lumbar and cervical ESI's have provided Plaintiff relief from the pain for extended periods of time, though the ESI's provide only temporary relief and do not provide a cure for or treat the cause of the underlying pain. [Majors Dep. p. 20]. Importantly, all of the treating physicians and the medical experts opine, and the Court agrees, that Plaintiff is a "straight shooter" [Kerr Dep. p. 25-26]—*i.e.*, there is no evidence of symptom magnification or malingering by Plaintiff. [Plaintiff's Testimony; Kerr Dep. p. 25-26; Smith Dep. p. 44; Mills Dep. p. 8].

At trial, Plaintiff testified that she enjoyed many outdoor activities with her family and friends, like riding motorcycles, riding horses, fishing, and going to the fair. Since the accident, she has trouble fishing and riding in a boat, she is unable to enjoy the rides at the fair, she does not go shopping as often, and she needs assistance carrying groceries. Plaintiff also testified that while she never had difficulty performing her job prior to the accident, she now occasionally experiences pain when she works as a slot attendant at El Dorado Casino.

Dr. Kerr testified that Plaintiff's condition will progressively worsen over time and will require future medical treatment, including an annual cervical MRI and additional ESI's over the next two to three years. [Kerr Dep. p. 21-28, 40]. The current cost of a cervical diagnostic MRI study is $1,339.00, the current cost for a lumbar ESI is $4,785.80, and the current cost for a cervical ESI is $4,723.77. [Plaintiff's Exhibits 11, 25, 27, 28, 30].

## CONCLUSIONS OF LAW

Defendants are liable to Plaintiff for all damages caused by the fault of Larry Schwie. See La. C.C. art. 2315. "A defendant in a personal injury case takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct." Lenard v. State Farm Mut. Auto Ins. Co., 900 So.2d 322, 325 (La.App. 2 Cir. 2005). When the defendant's tortious conduct aggravates a pre-existing condition, the defendant must compensate the victim "for the full extent of the aggravation." Id. (citing Foreman v. Babin, 887 So.2d 143 (La.App. 5 Cir. 2004).

Before recovery can be granted for aggravation of a pre-existing condition, the Plaintiff must establish a causative link between the accident and her current status. Lamb v. Berry, 803 So.2d 1084, 1086 (La.App. 2 Cir. 2001). The test for determining a causative link between the accident and the subsequent injuries is "whether the plaintiff proved through medical testimony that it was more probable than not that subsequent injuries were caused by trauma suffered in the accident." Id. The Plaintiff is aided by a legal presumption that her disability is presumed to have resulted from the accident, if: (1) she was in good health prior to the accident; (2) commencing with the accident, the symptoms of the disabling condition appear and continuously manifest themselves afterwards; and (3) the medical evidence shows there is a "reasonable possibility" of a causal connection between the accident and the disabling condition. See Housley v. Cerise, 579 So.2d 973, 980 (La. 1991) (quoting Lukas v. Ins. Co. of North America, 342 So.2d 591 (La. 1977)).

Defendants contend the Housley presumption does not apply in this case. They argue Plaintiff's pre-existing neck and back condition was aggravated only for a limited duration and that any exacerbations of Plaintiff's symptoms after June 24, 2008, when

Plaintiff had her first extended period of time with no pain in her back or neck, were not legally caused by the December 10, 2007 motor vehicle accident. [DPOF ¶¶ 3-4]. In support of their argument, Defendants point to the testimony of Dr. Smith who opined that "the ordinary time for aggravation of soft tissue injuries or for cervical or lumbar strain type injuries associated with this should be no more than six months." [Smith Dep. p.20]. Nevertheless, Dr. Kerr, Plaintiff's treating physician, testified that, based on reasonable medical certainty, it is more probable than not that the care and treatment provided to Plaintiff through October 6, 2009, the date of her last office visit, is related to the December 10, 2007 motor vehicle accident. [Kerr Dep. p. 25]. In addition, Dr. Kerr testified that the accident is the most proximate cause for any treatment needed by Plaintiff for "two or three years afterwards." Id. at p.27-28. Under Louisiana jurisprudence, a treating physician's opinion is generally entitled to more weight than a non-treating physician's, particularly one who is employed for the purposes of litigation, like Dr. Smith. See Guillory v. Lee, 16 So.3d 1104, n.31 (La. 2009); Ladner v. Gov't Employees' Ins. Co., 992 So.2d 1098, 1104 (La.App. 4 Cir. 2008); Wood v. American Nat. Property & Cas. Ins. Co., 1 So.3d 764 (La.App. 3 Cir. 2008) (Thibodeaux, C.J., dissenting) (citing Winch v. Double M, Inc., 764 So.2d 1055, 1059 (La.App. 3 Cir. 2000); Britton v. Morton Thiokol, Inc., 604 So.2d 130, 135 (La.App. 2 Cir. 1992).

The medical records demonstrate, and all physicians agree, that Plaintiff was asymptomatic prior to the accident and that the symptoms of her disabling condition manifested after the accident. In fact, there is sufficient medical evidence demonstrating a "reasonable probability" of a causal connection between the accident and the aggravation

Plaintiff had her first extended period of time with no pain in her back or neck, were not legally caused by the December 10, 2007 motor vehicle accident. [DPOF ¶¶ 3-4]. In support of their argument, Defendants point to the testimony of Dr. Smith who opined that "the ordinary time for aggravation of soft tissue injuries or for cervical or lumbar strain type injuries associated with this should be no more than six months." [Smith Dep. p.20]. Nevertheless, Dr. Kerr, Plaintiff's treating physician, testified that, based on reasonable medical certainty, it is more probable than not that the care and treatment provided to Plaintiff through October 6, 2009, the date of her last office visit, is related to the December 10, 2007 motor vehicle accident. [Kerr Dep. p. 25]. In addition, Dr. Kerr testified that the accident is the most proximate cause for any treatment needed by Plaintiff for "two or three years afterwards." Id. at p.27-28. Under Louisiana jurisprudence, a treating physician's opinion is generally entitled to more weight than a non-treating physician's, particularly one who is employed for the purposes of litigation, like Dr. Smith. See Guillory v. Lee, 16 So.3d 1104, n.31 (La. 2009); Ladner v. Gov't Employees' Ins. Co., 992 So.2d 1098, 1104 (La.App. 4 Cir. 2008); Wood v. American Nat. Property & Cas. Ins. Co., 1 So.3d 764 (La.App. 3 Cir. 2008) (Thibodeaux, C.J., dissenting) (citing Winch v. Double M, Inc., 764 So.2d 1055, 1059 (La.App. 3 Cir. 2000); Britton v. Morton Thiokol, Inc., 604 So.2d 130, 135 (La.App. 2 Cir. 1992).

The medical records demonstrate, and all physicians agree, that Plaintiff was asymptomatic prior to the accident and that the symptoms of her disabling condition manifested after the accident. In fact, there is sufficient medical evidence demonstrating a "reasonable probability" of a causal connection between the accident and the aggravation

or exacerbation of Plaintiff's condition for a period three years after the accident. See Kerr Dep. p. 25-28.

Finding the Housley presumption applies and Plaintiff is entitled to recover damages from Defendants for the aggravation or exacerbation of her pre-existing condition, the Court has the authority to award Plaintiff damages for past medical expenses, future medical expenses, past lost wages, past pain and suffering, future pain and suffering, and loss of enjoyment of life. See PPOF ¶ 6; Locke v. Young, 973 So.2d 831, 840 (La.App. 2 Cir. 2007).

In order to justify an award of future medical expenses, there must be medical testimony indicating that future medical expenses will be necessary and inevitable. Goza v. Parish of West Baton Rouge, 21 So.3d 320, *21-22 (La.App. 1 Cir. 2009). The amount of future medical expenses to be incurred by Plaintiff must be established with some degree of certainty; however, it need not be established with absolute certainty since an award for future medical expenses is by nature somewhat speculative. Id. (citing Grayson v. R.B. Ammon & Assoc., Inc., 778 So.2d 1, 23 (La.App. 1 Cir. 2000), writ denied, 782 So.2d 1026, 1027 (La. 2001)). Here, the Court finds there is a reasonable degree of certainty that the future medical expenses to be incurred by Plaintiff from now through December 10, 2010, three years from the date of the accident, will include the expenses of an annual MRI study, one round of lumbar ESI's, one round of cervical ESI's, and office visit expenses.

Therefore, having carefully considered the evidence and the medical testimony, the Court finds Plaintiff is entitled to recover damages in the following amounts:

| | |
|---|---|
| Past medical expenses | $41,120.26 |
| Future medical expenses | $11,240.57[1] |
| Past lost wages | $   337.64 |
| Past pain and suffering | $50,000.00 |
| Future pain and suffering | $15,000.00 |
| Loss of enjoyment of life | $10,000.00 |
| **Total** | **$127,698.47** |

In addition, Plaintiff is entitled to recover all taxable costs of court and post-judgment interest as allowed by law.

## CONCLUSION

Accordingly, for the reasons set forth herein,

**IT IS ORDERED** that Plaintiff is entitled to damages for her injuries in the amount of $127,698.47, plus all taxable costs of court and post-judgment interest as allowed by law.

A Judgment consistent with this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 28th day of April, 2010.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE

---

[1] The amount includes the costs of medical expenses for one additional cervical MRI study, one lumbar ESI, one cervical ESI, one "Level 3" office visit for Dr. Kerr and one "Level 4" office for Dr. Kerr.  [PPOF 68, 69, 71, 72, 74, 76, 77].